IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIRST AMERICAN TITLE, INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-14-0473 |
| BRETT C. MOODY INVESTMENTS, LLC, *et al.* | § § § § | |
| Defendants. | § | |

## ORDER

This case involves a quarter-million dollar payment that the plaintiff, First American, made to the defendant, Moody Investments. First American seeks reimbursement, alleging that it paid Moody Investments by mistake based on a misunderstanding of how Iowa's method for assessing and collecting taxes worked. First American sought relief in the courts, asserting (among other causes of action) a claim for money had and received. Moody Investments responded that it would be prejudiced by doing so because it had already disbursed the money. Moody Investments also asserted that First American's "unclean hands"—its negligence in making the payment—should bar recovery.

In March 2015, the court denied both parties' motions for summary judgment on First American's claim for money had and received. The court concluded that, as in "many of the Texas state cases weighing the equities in resolving a claim for money had and received, the proper mechanism for resolving the parties' dispute is a trial." (Docket Entry No. 88, at 25). The court set the case for a bench trial and allowed First American to pursue limited discovery to determine the

recipients of the disbursed funds. First American learned that Brett C. Moody, the principal officer of Moody Investments, had received all the money. The court denied First American's request to revive its previously dismissed claims against Mr. Moody because the request fell outside Fed. R. Civ. P. 60(c)'s one-year limit. The court did, however, grant a continuance to allow First American to depose Mr. Moody. (Docket Entry No. 98).

First American now asks the court to reconsider the order denying its motion for summary judgment on the money had and received claim. (Docket Entry No. 99). First American argues that the new evidence that Mr. Moody was paid all of the money Moody Investments received from First American shows that "[t]here are simply no equities to balance" because "Moody Investments failed to present evidence that it changed positions or assumed liabilities or obligations it would not have otherwise assumed" in reliance on the payment. (Docket Entry No. 99, at 13, 19). First American contends that the cases cited in the court's Memorandum and Opinion do not preclude summary judgment on money had and received claims. (Docket Entry No. 99, at 13 (citing cases)). Moody Investments responded, (Docket Entry No. 101), and First American replied, (Docket Entry No. 102).[1]

First American is correct that some cases have affirmed summary judgment on money had and received claims.[2] But the court adheres to its original conclusion that a bench trial is the better

---

[1] The parties dispute the standard for considering First American's motion for reconsideration. *Compare* (Docket Entry Nos. 99 & 102 (asserting that Rule 54(b) applies)), *with* (Docket Entry No. 101 (urging that Rule 59(e)'s more demanding standard applies)). Because the court's denial of First American's motion for summary judgment "was an interlocutory order, not a final judgment," the court is "free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210 (5th Cir. 2010). Rule 54(b)'s less demanding standard governs.

[2] First American relies heavily on *Pickett v. Republic Nat'l Bank of Dallas*, 619 S.W.2d 399, 400 (Tex. 1981) (per curiam), which held that a "showing that the [defendant] no longer has the specific funds"

2

Case 4:14-cv-00473 Document 103 Filed in TXSD on 07/28/15 Page 3 of 4

way to decide this case. A reasonable factfinder could still conclude that when Moody Investments paid Mr. Moody, it detrimentally relied on First American's unconditional payment to Moody Investments. Although the new evidence may tilt the equities in First American's favor, it does not entitle First American to judgment as a matter of law, especially given Moody Investment's unclean-hands defense. *See Bank of Saipan v. CNG Financial Corp.*, 380 F.3d 836, 841 (5th Cir. 2004) (reversing the district court's grant of judgment as a matter of law to CNG on the Bank of Saipan's claim for money had and received and remanding for trial, explaining that "if the jury finds that the Bank's actions constituted negligence but . . . the Bank presents a cognizable claim, it will have to take that degree of unclean hands into account and weigh it against the proved misconduct of CNG when determining whether the amount (if any) of the Bank's loan should be returned to it" and that the court could not "as a matter of law" resolve the prejudice issue because it was "for a jury to consider these facts and determine questions of unjust enrichment").[3]

---

is insufficient as a matter of law to "raise a fact issue of prejudicial change of position." *Id.* at 400. But as this court noted in its Memorandum and Opinion denying summary judgment, the *Pickett* court did not consider what could raise a fact issue as to detrimental reliance because in that case, there was no summary judgment evidence that the trusts had "changed positions or assumed liabilities or obligations they would not otherwise have assumed." *Id.*

[3] *See also Edwards v. Mid–Continent Office Distribs., L.P.*, 252 S.W.3d 833, 838 (Tex. App.-Dallas 2008, pet. denied) ("The common thread in these [money had and received] decisions is that they are all dependent upon a balancing of the equities in each unique case." (citing cases)); *Chesapeake Operating, Inc. v. Whitehead*, C-10-301, 2011 WL 3813174, at *7 (S.D. Tex. Aug. 26, 2011) (denying summary judgment on the plaintiff's claim for money had and received and proceeding to a bench trial because the plaintiff's Assistant Controller "admitted there was a 'breakdown' in [its] system that allowed the payments on the invoices to continue when they should not have" and because of "[t]he competing evidence regarding the comparative responsibility between the parties for the mistake in paying the invoices"). In *Chesapeake*, the court held a bench trial and issued findings and conclusions stating that "[i]n equity and good conscience, the losses caused by the scheme that Whitehead perpetrated against Chesapeake and Cash Flow, both, should be borne by both Chesapeake and Cash Flow," and that "[i]n equity and good conscience, one-half of the monies paid by Chesapeake and received by Cash Flow, belong[ed] to Chesapeake," so that "Chesapeake [was] entitled to recover from Cash Flow the sum of $427,587.50." *Chesapeake*, 2011 WL 4372486, at *5-6.

As the court stated in its earlier Memorandum and Opinion denying summary judgment,

> . . . a factfinder could conclude that Moody Investments had a reasonable basis to conclude that the money First American paid belonged to Moody Investments and could be distributed to its investors [Brett C. Moody].  But the record does not establish that, as a matter of law, Moody Investments does not have to pay any of the money back to First American.  A reasonable factfinder could conclude that Moody Investments did not detrimentally rely on the payment in distributing a dividend to [Brett C. Moody], or that the equities weigh in favor of requiring Moody Investments and First American to share the loss.
>
> . . . .
>
> . . . To determine whether First American is entitled to all or part of the money "in good conscience," a factfinder must weigh the equities.  A trial is the most appropriate mechanism for doing so.
>
> . . . .
>
> In this case, as in *Chesapeake* and many of the Texas state cases weighing the equities in resolving a claim for money had and received, the proper mechanism for resolving the parties' dispute is a trial.

(Docket Entry No. 88, at 23, 25).

First American's motion for reconsideration, (Docket Entry No. 99), is denied.  The parties are ordered to appear for a final pretrial conference on **August 20, 2015**, at 4:00 p.m. in Courtroom 11-B at 515 Rusk Street, Houston, Texas, 77002.  The bench trial will begin on **August 27, 2015**, at 9:00 a.m.

SIGNED on July 28, 2015, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge